# SUPREME JUDICIAL COURT

#### AT THE

## MARCH SESSION 1870, IN BOSTON.

———

PRESENT:

HON. REUBEN A. CHAPMAN, CHIEF JUSTICE.
HON. HORACE GRAY, JR., ⎫
HON. JOHN WELLS, ⎬ JUSTICES.
HON. SETH AMES, ⎪
HON. MARCUS MORTON, ⎭

---

### HENRY G. CLARK, petitioner.
### ATTORNEY GENERAL, petitioner.

Under the Gen. Sts. c. 115, § 17, and St. of 1860, c. 191, this court cannot allow expenses and fees of experts not appointed by the court, employed, in a capital case, by the counsel for the prisoner, without the authority or approval of the attorney general; but may allow a reasonable compensation, approved by the attorney general, to experts so employed with his assent, to make investigations, give opinions, or testify on the trial.

THE FIRST CASE was a petition filed by Henry G. Clark, a surgeon, for the allowance of a bill in which he charged the sum of $150 against the county of Suffolk, for "consultations and attendance in court" three days at October term 1867, as a witness for the prisoner, on the trial of an indictment against Edward C. McGuire for murder; to which bill was appended a certificate of the prisoner's counsel that the services charged for

were rendered by the petitioner at their request, and the charge was reasonable and proper. The petition was reserved for the consideration of the full court, and argued in November 1868.

*H. W. Paine*, for the petitioner. The petitioner is entitled to payment, as a witness necessary to the prisoner's defence, summoned under the Gen. Sts. *c.* 171, § 24. The statute makes no discrimination between the discretion of the prosecuting officers and that of the counsel for the prisoner, in summoning witnesses in capital cases, or in determining the necessity of the purpose for which they are summoned. It trusts the integrity and good judgment of both; and dismissal from the bar is the appropriate penalty for an abuse of this confidence.

*G. P. Sanger*, district attorney. This bill is unapproved by the attorney general, because the expert was employed by the prisoner's counsel without consultation with the prosecuting officers or permission of the court. And further, the petitioner was called to testify at what angle a ball must have been fired to produce a certain wound, and his testimony was ruled inadmissible.

CHAPMAN, C. J. Dr. Clark was summoned as a witness for the prisoner in the case of *Commonwealth* v. *McGuire*, (who was indicted for murder,) and attended three days. His attendance was procured as an expert, and he testified as such. He asks an order of the court, allowing him fifty dollars per day, that being the usual charge of experts for attendance in criminal cases, as it is alleged.

We do not doubt that the prosecuting officers of the government have a large discretionary power in respect to the investigation of criminal cases, and that for the purpose of eliciting the truth they may call in the aid of experts, and may furnish such aid to a prisoner. But the power of the court, independently of the attorney general, in respect to it, is regulated by statute.

It is provided by Gen. Sts. *c.* 171, § 24, that a person indicted for a crime punishable with death, or imprisonment for life in the state prison, shall have "process to summon such witnesses as are necessary to his defence, at the expense of the Common wealth." But it does not provide that he shall be permitted

to employ experts to do any other service than as witnesses. Chapter 157 establishes the amount of fees to be allowed to witnesses, and does not authorize the court to exceed that allowance. Costs are first taxed by the clerk, and questions respecting the taxation come before the court by appeal; but the court has no power to allow, in any form, the amount claimed by the applicant for his services as an expert. *Petition dismissed.*

THE SECOND CASE was a petition filed by the attorney general January 10, 1870, and reserved by *Colt*, J., for the consideration of the full court, representing that in December 1869, at the trial in the county of Plymouth of an indictment against Samuel M. Andrews for murder, Edward Jarvis, a physician, attended for several days, by request of the counsel for the prisoner, to testify as an expert, and did testify in that capacity in his behalf; and that, before said trial, by request of the counsel for the prisoner, John E. Tyler, a physician, visited the prisoner in jail, and also advised with said counsel, in relation to his mental condition, but was not summoned or requested by them to attend and testify at the trial, and did not so attend or testify; that now said counsel were requesting the attorney general to allow them to tax, as a part of the costs to be paid out of the public treasury, certain sums in excess of ordinary witness fees, as compensation to Jarvis and Tyler respectively, for their said services; that neither Jarvis nor Tyler were employed as aforesaid with the previous consent or knowledge of the attorney general, yet he was willing to allow a reasonable compensation to them if he had authority to do so; and that, being doubtful whether he was authorized by any statute of the Commonwealth to allow any sum as compensation to Jarvis except the ordinary statute fees for travel and attendance as a witness, or to allow any compensation whatever to Tyler, he requested instructions as to his authority.

*C. Allen*, Attorney General. It is no part of the ordinary practice or duty of the Commonwealth to defray the expenses of the defence of persons charged with crime. The government furnishes compulsory process for obtaining witnesses, and allows

counsel, but usually pays neither. Const. of U. S., 6th Amendment. Under our statutes, a person charged with a capital crime is entitled to a copy of the indictment, a list of the jurors, and "process to summon such witnesses as are necessary to his defence, at the expense of the Commonwealth." Gen. Sts. c. 171, §§ 22, 24. The court may also assign him counsel. c. 112, § 9. The Gen. Sts. c. 157, § 8, establish the fees to be paid to witnesses : "for attending as a witness in a civil or criminal cause," $1.25 per day, besides fees for travel. They contain no provision allowing extra fees to witnesses in any case ; but a necessary practice has long prevailed of allowing extra expenses incurred by the prosecuting officers in the prosecution of crimes, as "expenses incident to the courts" within the Gen. Sts. c. 115, § 17. These officers represent the Commonwealth ; and when it is necessary to incur preliminary expenses of any sort, as, for instance, to make plans, to spend time in looking up witnesses, to send outside the Commonwealth for witnesses, to make chemical analyses to detect poison or bloodstains, the bills must be allowed in some form. But the question of allowing such bills incurred by persons under indictment rests on entirely different considerations ; and there is nothing in the statutes to show that the legislature ever intended to assume them.

Medical experts, who know no facts, and are only called to give opinions, are in no proper sense witnesses. It is doubtful whether they are bound to obey subpœnas, whether the court would compel their attendance, or whether an action would lie against them for refusing to testify. See *In re Roelker*, 1 Sprague, 276 ; *Webb* v. *Page*, 1 C. & K. 23 ; 1 Greenl. Ev. § 310, note. There is no more reason why they should be paid, than the counsel assigned to defend prisoners under indictments for murder. If the legislature intend to have such fees paid, it is for the statutes to say so; and not for prosecuting officers o courts to assume the authority. In civil cases, no special or extra fees are taxable. *Parks* v. *Brewer*, 14 Pick. 192.

The St. of 1860, c. 191, provides that specific fees therein enumerated shall be taxed as the costs of criminal prosecutions

and none other "except such as the court shall deem reasonable for services not herein specifically provided for." Accordingly, extra expenses would seem in all cases to require the sanction of the court, before being paid. This statute was not intended to enlarge the authority to allow expenses, but to provide that the supervision and determination of what customary expenses are reasonable should rest with the court, and not with the prosecuting officers alone.

*G. A. Somerby,* for Jarvis. A person indicted for a capital offence is entitled, as of right, to "process to summon such witnesses as are necessary to his defence, at the expense of the Commonwealth." Gen. Sts. *c.* 171, § 24. These terms include any witness, whether summoned to give an opinion or state a fact. The only limitation is, to witnesses "necessary to his defence;" and this must be the test.

The prisoner Andrews was defended, among other grounds, on that of insanity; but was found guilty of manslaughter. Considering the subtle nature of insanity, his counsel could not have justified themselves in not presenting that ground of defence; and the necessity of their doing so is not to be judged of by the actual course of the trial, but by the reasonable appearance of things before the trial. They were the only persons to determine in advance what witnesses were "necessary to his defence;" and if in good faith they believed that the insanity of the prisoner was a fair question to be presented and tried, it follows that the opinion of an expert on that question was "necessary," in the sense of the statute, to the defence.

It is immaterial whether the expert is paid as a witness, or by the same authority by which necessary expenses of preparation and trial, outside of fees of witnesses as such, are paid under the Gen. Sts. *c.* 115, § 17, as "expenses incident to the courts." The expenses of preparation in the defence of capital cases are as much "expenses incident to the courts" as the expenses of preparation in the prosecution. The theory of the law is, that the government, in a capital case, provides counsel and means for the necessary defence of the prisoner.

Whether in a civil case an expert could be compelled to give an opinion at all, or if summoned and coming as a witness could receive more than usual witness fees, are questions of which the solution would shed no light upon the present question.

CHAPMAN, C. J. In the case of an indictment for murder, the prisoner's counsel employed a medical expert to visit the prisoner before the trial, in order that he might form an opinion whether the prisoner was insane, but did not procure his attendance at the trial. They employed another expert, who visited the prisoner and also attended the trial and testified. They request the attorney general to allow them to tax, as a part of the costs to be paid out of the public treasury, certain sums in excess of ordinary witness fees, as a compensation to each of these experts. The attorney general requests the instructions of the court as to his authority in the premises; and represents that, though neither of these experts was employed with his previous consent or knowledge, yet he is willing to allow each of them a reasonable compensation, if he has authority to do so.

It is contended in behalf of the one who attended the trial, that he has a right to the allowance, under Gen. Sts. c. 171 § 24, which provides that the prisoner is entitled to process to summon such witnesses as are necessary to his defence, at the expense of the Commonwealth. But, by c. 157, § 8, the fees of the witnesses are fixed, and no authority is given to allow them anything further.

It is also contended that the allowance may be made under c. 115, § 17, which authorizes courts to receive, examine and allow accounts for services and expenses incident thereto in the several counties. But this provision is not limited to capital cases, nor to this court, and it does not authorize courts in all criminal cases to allow charges for experts employed by defendants, any more than it authorizes them to allow charges for the fees of the defendants' witnesses or counsel. Under this statute, and other similar statutes of an earlier date, it has been the practice of prosecuting officers to incur extra expenses in the

prosecution of crimes. Some of these are preliminary to the trial, and others are incurred at the trial. Some are incurred in searching for evidence, or in making scientific examinations and experiments. Among them is the compensation of experts. These expenses are often necessary ; and it has been the practice of courts to allow them. The statute is not limited to capital cases.

There is yet another statute that has some bearing on the subject. By St. 1860, *c.* 191, which defines the costs of criminal prosecutions, it is provided that certain specific fees shall be taxed, including the fees of witnesses, " and none other except such as the court shall deem reasonable for services not herein specifically provided for." The implied authority of the court which this exception contains is very indefinite, and we cannot see that it confers any rights on defendants to charge their expenses to the government.

Even in capital cases, in which the court is authorized by Gen. Sts. *c.* 112, § 9, to assign counsel to the prisoner, it has not been held that they had authority to allow counsel fees. When a prisoner has not obtained counsel, it is usual for the court to request some member of the bar to aid him ; and we believe that no prisoner has been compelled to go to trial in a capital case without being ably and faithfully defended. The members of the bar have been ready, so far as they reasonably could do so, to give their best services gratuitously, in aid of any prisoner who was unable to pay counsel.

Whenever the prosecuting officer thinks the interests of justice require it, we do not doubt that he is authorized, by the statutes above mentioned, to employ experts to make proper investigations for ascertaining the truth of a case, and that it is proper for him in some capital cases to enable the prisoner's counsel to make similar investigations, and to procure the attendance of experts at the trial, if the prisoner is not able to do so ; and the court is authorized to allow a reasonable compensation to such experts for their services, both for attending the trial and for their prior investigations. This is not on the ground that the statute has given to a prisoner the right to such

aid at the expense of the public treasury; but on the ground that it is for the interest of the Commonwealth, in the case then before the court, that all proper investigations should be made, in order to guard against the danger of doing injustice to the prisoner in a case where he is exposed to so great a penalty. The experts selected by the attorney general ought to testify with impartiality, and without any bias against the prisoner, and it is to be presumed that he will select able and impartial experts only. So it is the duty of all experts called in any case, to testify with impartiality; but it is notorious that experts are called by parties in many cases who are governed in their investigations and their testimony by a partisan desire to aid the party that employs them, and not by an impartial desire to present fairly the truth of the case. In consequence of this, the testimony of experts has often been brought into discredit. We do not think the prosecuting officer or the court would be authorized to allow the charges of all such persons as the prisoner would have a right to employ as experts at his own expense, without regard to their character or to the need of employing them in the case. But the assent of the prosecuting officer should be obtained beforehand to the employment of such experts as may be selected and agreed upon, or, in case of his refusal to assent, application should be made to the court to appoint the experts. This would be the more proper course of proceeding, if the prisoner desires to have the experts called by him paid out of the public treasury.

In the present case, the attorney general expresses his willingness to consent to a reasonable allowance to each of the experts named, if he has authority to do so, and the court will, with his assent, allow the bills to a reasonable amount.

*Ordered accordingly.*