O'COIN'S, INC. *vs.* TREASURER OF THE COUNTY OF WORCESTER & others.

Worcester. March 9, 1972. — September 19, 1972.

Present: TAURO, C.J., SPIEGEL, REARDON, & HENNESSEY, JJ.

*Judge. Constitutional Law,* Separation of powers, Judiciary. *County. Mandamus. Practice, Civil,* Parties.

A judge has the inherent power contractually to bind the State, or the appropriate political subdivision thereof, for expenses reasonably necessary for the opération of his court, and to issue an ex parte order for the payment of any obligation so incurred, notwithstanding the absence of a prior appropriation to cover the expenditure. [509–511]

A judge of the Superior Court, under G. L. c. 213, § 8, or under his inherent power alone, may incur as a county charge any expense which is reasonably necessary for the conduct of a sitting of the court. [514–515]

Statement of the substance of a rule which this court intends to adopt to guide judges of inferior courts with respect to making or approving of contracts for the furnishing of goods, services, or facilities to the courts by the Commonwealth or political subdivisions thereof. [515–517]

Mandamus lay to compel the treasurer of a county to pay from county funds for a tape recorder and tapes purchased by a judge of the Superior Court as a "necessary expense" of the court to obviate "a temporary closing of a [criminal] session" when no stenographer was available, even though the purchase was made without prior approval from a superior judicial officer. [517–518]

Mandamus did not lie against the commissioners of a county to compel the payment from county funds of court expenses. [518]

PETITION for a writ of mandamus filed in the Superior Court on April 26, 1971.

The case was reported by *Spring*, J.

*Milton H. Raphaelson* for the petitioner.

*Joseph F. Sawyer, Jr.*, for the respondents.

TAURO, C.J.   The petitioner seeks a writ of mandamus under G. L. c. 249, § 5, directing the respondent treasurer and respondent commissioners of Worcester County to pay it the amount of $86 for a tape recorder and three tapes purchased by a judge of the Superior Court for use during criminal sittings in the county.   See G. L. c. 35, § 35.   The case is reported to us without decision upon the petition, the respondents' answer, and a statement of agreed facts.   G. L. c. 213, § 1B; c. 231, § 111.

The petitioner is a retail appliance store doing business in Worcester County.   On March 25, 1971, a judge of the Superior Court sitting in Worcester forwarded to the respondent treasurer an invoice from the petitioner, dated March 24, 1971, in the amount of $86 for the tape recorder ($80) and the tapes ($6).   Upon the invoice was written the following: "3/25/1971.   Approved for payment.   John H. Meagher, J[udge] S[uperior] C[ourt]."   In a letter accompanying the invoice, the judge certified that the tape recorder was a "necessary expense" of the court made "[t]o obviate a temporary closing of a [criminal] session" when no stenographer was available.   Since its purchase, the tape recorder has been used in the Worcester Superior Court in criminal matters and, upon agreement of counsel, also in civil matters.   The respondent treasurer has refused to make payment for the machine and the tapes.

In support of his refusal, the respondents argue that the Superior Court has no authority to bind a county for the payment of goods and services except under G. L. (Ter. Ed.) c. 213, § 8,[1] and that the statute does

---

[1] "The [supreme judicial and superior] courts shall, respectively, receive, examine and allow accounts for services and expenses incident to their sittings in the several counties and order payment thereof out of the respective county treasuries."   Compare G. L. c. 215, § 53 (concerning the Probate Courts); c. 218, § 39 (concerning the District Courts).

not apply here where a purchase by the court is involved. We reject these contentions.

1. Even apart from statutory provisions, we are of opinion that a judge may bind a county [2] contractually for expenses reasonably necessary for the operation of his court, and that he may issue an ex parte order for the payment of any obligation so incurred.

Under our Constitution, the courts of the Commonwealth constitute a separate and independent department of government entrusted with the exclusive power of interpreting the laws. Massachusetts Constitution: Preamble, Declaration of Rights, art. 30; Frame of Government, c. 3. In erecting this tripartite form of government, our first citizens meant to secure to themselves, and their successors, every natural right of free men. *Id.,* Preamble. The intimate relationship between these rights and the judicial power is made clear in art. 29 of the Declaration of Rights: "It is essential to the preservation of the rights of every individual, his life, liberty, property, and character, that there be an impartial interpretation of the laws, and administration of justice." Also it is provided in art. 11: "Every subject of the Commonwealth . . . ought to obtain right and justice freely, and without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws."

From these provisions, it necessarily follows that "courts of general jurisdiction . . . have the inherent

---

[2] Nothing stated herein should be taken to mean that the Commonwealth may not be bound in the same manner. In Massachusetts, as in many other jurisdictions, "the expenses of justice are incurred for the benefit of the State, . . . [but are generally] charged against the counties in accordance with old usage" (*Stowell* v. *Board of Supervisors for Jackson County,* 57 Mich. 31, 34). See G. L. c. 34, § 14; c. 185, § 13A; c. 213, § 8; c. 215, §§ 53–56B; c. 217, §§ 27A, 30, 39, 42; c. 218, §§ 39, 69–70, 74–76A, 77A–81; c. 221, §§ 55, 61, 62A, 69–70, 73, 75–77, 80, 88, 90A–92, 94, 99–102. See also *Adams* v. *County Commrs. of Norfolk,* 166 Mass. 303; *Walsh* v. *Commonwealth,* 224 Mass. 39, 41; *Rooney, petitioner,* 298 Mass. 430, 432; *Abodeely* v. *County of Worcester,* 352 Mass. 719, 720–725. The practice now, however, is that some expenses are charged to the Commonwealth. See G. L. c. 185, § 14; c. 211, §§ 21–23; c. 212, §§ 27–28; c. 217, §§ 33–35, 40, 43; c. 218, §§ 43A, 43C, 74; c. 221, §§ 34C, 36, 68, 93.

power to do whatever may be done under the general principles of jurisprudence to insure to the citizen a fair trial, whenever his life, liberty, property or character is at stake." Justice, later Chief Justice, Rugg in *Crocker* v. *Superior Court,* 208 Mass. 162, 179. Simply stated, implicit in the constitutional grant of judicial power is "authority *necessary* to the exercise of . . . [that] power" (emphasis supplied). *Opinion of the Justices,* 279 Mass. 607, 609. Such authority is not limited to adjudication, but includes certain ancillary functions, such as rule-making and judicial administration, which are essential if the courts are to carry out their constitutional mandate. See *Collins* v. *Godfrey,* 324 Mass. 574, 578–579; *Matter of DeSaulnier,* 360 Mass. 787, 808–809, 812. See also *LaChapelle* v. *United Shoe Mach. Corp.,* 318 Mass. 166, 170–171. Cf. *Attorney Gen.* v. *Brissenden,* 271 Mass. 172, 177–178 (concerning inherent powers of the Legislature).

It is axiomatic that, as an independent department of government, the judiciary must have adequate and sufficient resources to ensure the proper operation of the courts. It would be illogical to interpret the Constitution as creating a judicial department with awesome powers over the life, liberty, and property of every citizen while, at the same time, denying to the judges authority to determine the basic needs of their courts as to equipment, facilities and supporting personnel. Such authority must be vested in the judiciary if the courts are to provide justice, and the people are to be secure in their rights, under the Constitution.

We hold, therefore, that among the inherent powers possessed by every judge is the power to protect his court from impairment resulting from inadequate facilities or a lack of supplies or supporting personnel. To correct such an impairment, a judge may, even in the absence of a clearly applicable statute, obtain the required goods or services by appropriate means, including arranging himself for their purchase and ordering the responsible executive official to make payment.

It is not essential that there have been a prior appropriation to cover the expenditure. Where an obligation is thus legally incurred, it is the duty of the State, or one of its political subdivisions, to make payment. Massachusetts Constitution, Declaration of Rights, art. 10, as amended. Cf. *Opinion of the Justices*, 323 Mass. 764, 767–768. The view that there must be checks and balances between the departments of government is not contrary. It was certainly never intended that any one department, through the exercise of its acknowledged powers, should be able to prevent another department from fulfilling its responsibilities to the people under the Constitution.

2. The principles expressed today are recognized not only in Massachusetts but throughout the nation.

In a recent case, the Supreme Court of Pennsylvania affirmed, with minor modifications, an order compelling the mayor and city council of Philadelphia to provide funds necessary for the operation of a municipal court. The Supreme Court said: "Because of the basic functions and inherent powers of the three co-equal Branches of Government, the co-equal independent Judiciary must possess rights and powers co-equal with its functions and duties, including the right and power to protect itself against any impairment thereof. . . . Expressed in other words the Judiciary *must possess* the inherent power to determine and compel payment of those sums of money which are reasonable and necessary to carry out its mandated responsibilities, and its powers and duties to administer Justice, if it is to be in reality a co-equal, independent Branch of our Government." *Commonwealth ex rel. Carroll* v. *Tate*, 442 Pa. 45, 52 (citations omitted).[3]

There have been similar decisions by the highest courts of several States as well as Pennsylvania within the last

---

[3] Other Pennsylvania cases include *Commonwealth* v. *Clue*, 3 Rawle 498, 502, 503: *Commissioners* v. *Hall*, 7 Watts 290; *McCalmont* v. *County of Allegheny*, 29 Pa. 417, 419–420; *Leahey* v. *Farrell*, 362 Pa. 52, 54–60. See *In re Surcharge of County Commrs.* 12 D. & C. (Pa.) 471, 475–483.

decade. In *Smith* v. *Miller*, 153 Colo. 35, 40–41, the Supreme Court of Colorado adopted the following statement from the rulings of the trial judge: "[I]t is the genius of our government that the courts must be independent, unfettered, and free from directives, influence, or interference from any extraneous source. It is abhorrent to the principles of our legal system and to our form of government that courts, being a coordinate department of government, should be compelled to depend upon the vagaries of an extrinsic will. Such would interfere with the operation of the courts, impinge upon their power and thwart the effective administration of justice. . . . [I]t is the plain ministerial duty of those who control the purse to pay such expenses except only where the amounts are so unreasonable as to affirmatively indicate arbitrary and capricious acts."

Likewise, it was said in *Carlson* v. *State ex rel. Stodola*, 247 Ind. 631, 633–634: "The security of human rights and the safety of free institutions require freedom of action on the part of . . . courts[s]. . . . Our sense of justice tells us that a court is not free if it is under financial pressure, whether it be from a city council or other legislative body." [4] On the basis of such considerations, the Supreme Court of Michigan held as follows in *Wayne Circuit Judges* v. *Wayne County*, 383 Mich. 10, 22: "[T]he inherent power of courts is not exhausted when the needs of administration of justice have been declared and urged upon the legislative councils. There remains a narrower area in which the courts have inherent power to go further than merely declare the existence of a need. It is an area in which the courts have inherent power to bind the State or the county contractually." See *Stowell* v. *Board of Supervisors for Jackson County*, 57 Mich. 31, 33–35.

---

[4] Other Indiana cases are *Dunn* v. *State ex rel. Corydon*, 204 Ind. 390, 395; *Knox County Council* v. *State ex rel. McCormick*, 217 Ind. 493, 511–512; *Woods* v. *State*, 233 Ind. 320, 324–325, n. 3; *Noble County Council* v. *State ex rel. Fifer*, 234 Ind. 172, 178–187; *Castle* v. *State*, 237 Ind. 83, 86–87.

An earlier statement of the inherent power of the judiciary is found in *In re Court Room & Offices of the Fifth Branch of the Circuit Court, Milwaukee County,* 148 Wis. 109, 121: "The authorities . . . [indicate] that a constitutional court of general jurisdiction has inherent power to protect itself against any action that would unreasonably curtail its powers or materially impair its efficiency. A county board has no power to even attempt to impede the functions of such a court, and no such power could be conferred upon it. . . . [Courts of general jurisdiction under the Constitution] have the incidental power necessary to preserve the full and free exercise of their judicial functions, and to that end may, in appropriate cases, make ex parte orders without formally instituting an action to secure the desired relief." To the same effect are cases in numerous other jurisdictions. See authorities cited in the margin.[5] See also 20 Am. Jur. 2d, Courts, §§ 78, 79.

3. It is well recognized that the General Court, pursuant to its general police powers, may enact legislation which declares or augments the inherent powers of the judiciary.[6] See *Collins* v. *Godfrey,* 324 Mass. 574, 576,

---

[5] *Bates* v. *Independence County,* 23 Ark. 722, 724–726. *Dahnke* v. *People,* 168 Ill. 102, 107–109. *In re Appointment of Clerk of the Court of Appeals,* 297 S. W. 2d 764, 766 (Ky.). *Watson* v. *Moniteau County,* 53 Mo. 133. *State ex rel. Gentry* v. *Becker,* 351 Mo. 769, 778–781. *State ex rel. Weinstein* v. *St. Louis County,* 451 S. W. 2d 99 (Mo.). *State ex rel. Schneider* v. *Cunningham,* 39 Mont. 165. *State ex rel. Hillis* v. *Sullivan,* 48 Mont. 320, 325–332. *State ex rel. Kitzmeyer* v. *Davis,* 26 Nev. 373, 379–381. *Cohn* v. *Borchard Affiliations,* 30 App. Div. 2d (N. Y.) 74, 76. *State ex rel. Cooper* v. *Auditor of Hamilton County,* 19 Ohio 116, 125. *Zangerle* v. *Court of Common Pleas of Cuyahoga County,* 141 Ohio St. 70, 83–86. *In re Rooms & Facilities of the Common Pleas Court of Marion County,* 162 Ohio St. 345, 351–361. *State ex rel. Finley* v. *Pfeiffer,* 163 Ohio St. 149, 155–157. *Matter of Appointment & Removal of the Janitor of the Supreme Court,* 35 Wis. 410.

[6] Statutes governing the jurisdiction of inferior courts are another matter entirely. By virtue of the authority conferred by Part II, c. 1, § 1, art. 3, of our Constitution, the General Court may "erect and constitute" courts in addition to the Supreme Judicial Court and may fix, and at any time, modify their jurisdiction. See *Russell* v. *Howe,* 12 Gray 147, 153; *Ashley* v. *Superior Court,* 228 Mass. 63, 77–78, app. dism. sub nom. *Ashley* v. *Wait,* 250 U.S. 652; *Commonwealth* v. *Leach,* 246 Mass. 464, 470; *Keenan, petitioner,* 310 Mass. 166, 179.

and cases cited. See also *Commonwealth* v. *Anthes*, 5 Gray 185, 235–236. Even as we have stated this principle, however, we have also indicated that, since these inherent powers have their basis in the Constitution, regardless of any statute, every judge must exercise his inherent powers as necessary to secure the full and effective administration of justice. See *Crocker* v. *Superior Court*, 208 Mass. 162, 178–179; *Walton Lunch Co.* v. *Kearney*, 236 Mass. 310, 315–318; *Opinion of the Justices*, 314 Mass. 767, 772–785. Cf. *Matter of DeSaulnier* (No. 1) 360 Mass. 757, 758–759; *Matter of De Saulnier* (No. 4), 360 Mass. 787, 807–809.

' With respect to the statute involved in the instant case, the respondents argue that, inferentially, G. L. c. 213, § 8, forbids a judge from requiring a county to pay for the court's expenses at a criminal sitting, although the section clearly permits him to order counsel fees paid from the county treasury. We reject this construction.

The respondents' attach undue significance upon the fact that cases arising under G. L. c. 213, § 8, until now, have involved controversies over expenses incurred by prosecutors or defense counsel. See *Rooney* v. *County of Essex*, 292 Mass. 473; *Rooney*, petitioner, 298 Mass. 430; *Grady* v. *Treasurer of the County of Worcester*, 352 Mass. 702; *Abodeely* v. *County of Worcester*, 352 Mass. 719; *Commonwealth* v. *Possehl*, 355 Mass. 575.[7] Judicial notice may be taken that, without any statutory authority other than G. L. c. 213, § 8, judges of the Superior Court have regularly required counties to pay expenses incident to jury service, including board

See also article by Chief Justice Gray in 21 Monthly L. Rep. 65–83 (June, 1858). For the general police powers conferred upon the Legislature, see Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution, discussed by Knowlton, C. J., in *Commonwealth* v. *Strauss*, 191 Mass. 545, 550–551. See also *Whiteside* v. *Merchants Natl. Bank*, 284 Mass. 165, 171–174.

[7] See also *Clark, petitioner*, 104 Mass. 537, 538, 542, involving two cases decided under Gen. Sts. c. 115, § 17, a predecessor statute. Prosecution expenses are now expressly provided for by G. L. c. 12, § 24, as discussed in *Rooney, petitioner*, 298 Mass. 430, 432–434.

and lodging of jurors.[8]   Compare G. L. c. 262, § 25.
We also note that, on occasion, counties have been made
to pay for the production of transcripts and appeal rec-
ords and for travel expenses of law clerks outside Suffolk
County.

While G. L. c. 213, § 8, by its terms, does not expressly
authorize a judge to procure necessary court supplies at
a county's expense, the statutory language [9] certainly
would not preclude this practice.   A contrary interpreta-
tion of the statute would leave it open to constitutional
challenge as an unreasonable limitation upon the in-
herent power of the Judiciary.   See *Loriol* v. *Keene*, 343
Mass. 358, 363; *Opinion of the Justices*, 361 Mass. 897,
901.   Whether under G. L. c. 213, § 8, or under his in-
herent power alone, a judge of the Superior Court must
be able to incur as a county charge any expense which is
reasonably necessary for the conduct of a sitting of the
court.   See *Opinion of the Justices*, 279 Mass. 607, 610-
611; *Opinion of the Justices*, 314 Mass. 767, 776–778.

4. We are mindful that exercise of this inherent power
is a duty which must be borne responsibly.   A spirit of
mutual coöperation among the legislative, executive, and
judicial departments is unquestionably the people's best
guaranty of constitutional government.   It is therefore
incumbent upon the members of the judicial department
to proceed cautiously, and with due consideration for
the prerogatives of the executive department and the

---

[8] Significantly, this court, at least as early as 1771, recognized the
authority of lower courts in this regard.   In 1771, there occurred the
first criminal case lasting more than a day and requiring overnight
provisions for jurors.   The justices of the then Superior Court of
Judicature passed the following order: "[T]hat it be recommended to
the Court of General Sessions of the Peace to make the Jurors . . .
and also the Officers who kept them, a reasonable [a]llowance for . . .
[their] services . . . ."   Quincy's Massachusetts Reports, 382–386 (re-
porting a newspaper article concerning Preston's Trial).

[9] The language is essentially unchanged since 1809.   See St. 1808,
c. 53; Rev. Sts. c. 82, § 46; St. 1859, c. 196, § 20; Gen. Sts. c. 115, § 17;
Pub. Sts. c. 153, § 23; R. L. c. 158, § 8.   Earlier versions of the statute
are St. 1764–65, c. 26, § 6 (4 Prov. Laws, 750–751) ; St. 1782, c. 55; and
St. 1791, c. 53, § 2.

Legislature, whenever exercise of an inherent judicial power would bring us near the sphere of another department.

It has been wisely observed: "The very conception of inherent power carries with it the implication that its use is for occasions not provided for by established methods. . . . [Only w]hen . . . [established] methods fail and the court shall determine that by observing them the assistance necessary for the due and effective exercise of its own functions cannot be had, or when an emergency arises which the established methods cannot or do not instantly meet, then and not till then does occasion arise for the exercise of the inherent power." *State ex rel. Hillis* v. *Sullivan,* 48 Mont. 320, 329. See *Wayne Circuit Judges* v. *Wayne County,* 383 Mich. 10, 39, 42–44 (separate opinion by Adams, J.) ; *Leahey* v. *Farrell,* 362 Pa. 52, 59–60.

As the highest court in this State under the Constitution, we possess ample authority to make certain that the power to bind government contractually is exercised only upon proper occasions. See G. L. c. 211, § 3, as amended through St. 1956, c. 707, § 1. See also *Collins* v. *Godfrey,* 324 Mass. 574, 578–579. Cf. *Matter of DeSaulnier* (No. 1), 360 Mass. 757, 758–759; *Matter of DeSaulnier* (No. 4), 360 Mass. 787, 807–808. To this end we intend to adopt promptly a rule of court which will direct and guide judges of inferior courts in such matters. This rule will, in substance, provide that, except in the case of certain routine or emergency expenditures, which will be delineated, no judge shall make or approve a contract for goods, services, or facilities to be furnished by the Commonwealth, or one of its political subdivisions, unless he first obtains written approval from the Chief Justice of his court or another designated judicial officer. Upon a petition for declaratory relief such decision and approval would be subject to review by this court.

Where a judge exercises his inherent power under the proposed new rule and G. L. c. 213, § 8, we recognize

that there may be occasions where county officials have legitimate doubts as to the validity of the judge's order. In such event, the county treasurer may properly seek declaratory relief under G. L. c. 231A. See G. L. c. 35, § 11. Unless there is a determination that the judge's order is void as an abuse of discretion, the treasurer must make payment in accordance with the terms of the order. See G. L. c. 35, §§ 10, 14.

In the instant case, the respondent treasurer has not attempted to question the necessity of the tape recorder and tapes, nor did he seek a declaratory decree earlier on this score. Had he done so, the conclusion would have been that there was no abuse of discretion on the part of the judge who ordered payment. Clearly, the purchase of a tape recorder and tapes was warranted where the only alternative to purchase was to suspend the criminal sitting indefinitely until a stenographer could be obtained. Even under the strict rules to be established pursuant to this decision, an emergency was presented making it unnecessary to obtain prior approval from a superior judicial officer.

5. The final matters to be considered concern the remedy sought by the petitioner.

While the petitioner might have sought enforcement of the county's obligation through a contract action or a petition in equity,[10] we think that mandamus is also an appropriate remedy. See G. L. c. 35, § 35. See also *Reading* v. *Attorney Gen. ante* 266, 267. The respondent treasurer is correct in stating that mandamus will not lie to compel a public official to do a discretionary act. *Hobart* v. *Commissioner of Corps. & Taxn.* 311 Mass. 341, 346. *Angelico* v. *Commissioner of Ins.* 357 Mass. 407, 410. It is clear to us, however, that a county treasurer has no discretion in the payment of legally incurred

---

[10] See *Rooney* v. *County of Essex*, 292 Mass. 473, involving a contract action; and *Clark, petitioner*, 104 Mass. 536, *Attorney Gen. petitioner*, 104 Mass. 539, *Rooney, petitioner*, 298 Mass. 430, *Grady* v. *Treasurer of the County of Worcester*, 352 Mass. 702, and *Abodeely* v. *County of Worcester*, 352 Mass. 719, involving petitions in equity.

obligations. G. L. c. 35, §§ 10, 11, 14. If there is any question as to the legality of the obligation, the treasurer should seek a declaratory decree under G. L. c. 231A. Otherwise, he must make payment. *Markus* v. *County of Middlesex*, 356 Mass. 517, 519. See point 3 of this opinion, *supra*.

A different issue arises as to the respondent county commissioners. The petitioner indicates no way in which the commissioners are involved in the instant case. While county commissioners must approve many county expenses before payment can be made, the expenses of courts are clearly not subject to their supervision. G. L. c. 35, § 11. This exemption has always existed (see St. 1785, c. 76; Rev. Sts. c. 14, § 50) and, apart from any statutory provision, is implied by the constitutional status of the judiciary as an independent department of government. Cf. *Powers* v. *Isley*, 66 Ariz. 94; *Bass* v. *County of Saline*, 171 Neb. 538.

6. The petition is to be dismissed in so far as it relates to the county commissioners. A writ of mandamus is to be issued directing the respondent treasurer to pay the petitioner the amount of $86, with interest.

*So ordered.*