COMMONWEALTH vs. JOHN F. FITZPATRICK, JR.

Worcester. May 6, 1983. — May 25, 1983.

Present: GRANT, CUTTER, & SMITH, JJ.

*Practice, Criminal,* Instructions to jury, Stenographer. *Words,* "Reasonable doubt."

Where the judge at the trial of a criminal case instructed the jury that proof "beyond a reasonable doubt . . . means you must be pretty darn sure," reversal of the defendant's conviction was required. [99-100]

A criminal defendant was not entitled, in accordance with the provisions of G. L. c. 218, § 27A(*h*), to a trial transcript prepared by a stenographer in the absence of an appropriation of sufficient public funds to pay for the services of the stenographer. [100-103]

COMPLAINT received and sworn to in the Central Worcester Division of the District Court Department on August 31, 1981.

On appeal to the jury session of that court, the case was tried before *George, J.*

*Robert I. Warner* for the defendant.

*Lucia C. Scannell,* Assistant District Attorney, for the Commonwealth.

GRANT, J. The defendant has appealed from his conviction by a jury of six on a complaint charging him with a violation of G. L. c. 266, § 30. We reverse for inexcusable error in the portion of the charge which purported to define reasonable doubt. We also consider a procedural question which may arise on retrial.

1. The judge's first attempt to define reasonable doubt consisted of an arguably passable variation on the "moral certainty" theme of *Commonwealth* v. *Webster,* 5 Cush. 295, 320 (1850). See *Commonwealth* v. *Tavares,* 385 Mass. 140, 147 (1982); *Commonwealth* v. *Conceicao,* 388 Mass. 255, 266-267 (1983). In the very next sentence the judge ig-

nored the teaching of an unbroken line of cases which all but command that the definition of reasonable doubt be taken from the *Webster* case. See, e.g., *Commonwealth* v. *Gerald,* 356 Mass. 386, 390 (1969); *Commonwealth* v. *Pettie,* 363 Mass. 836, 842-843 (1973); *Commonwealth* v. *Therrien,* 371 Mass. 203, 207-209 (1976); *Commonwealth* v. *Robinson,* 382 Mass. 189, 197-198 (1981). To be specific, the judge told the jury that "beyond a reasonable doubt . . . means you must be pretty darn sure." The remainder of the charge contained nothing comparable to any of the redeeming features found in any of the cases just cited.

2. The defendant filed a timely request in writing for the appointment of a stenographer in accordance with the provisions of G. L. c. 218, § 27A(*h*), as appearing in St. 1978, c. 478, § 189.[1] The judge denied that request and "gave as [one of] his reasons that there were insufficient funds available to provide a stenographer."[2] The proceedings were recorded electronically, and counsel, after listening to

---

[1] "The justice presiding at such jury-of-six session *shall,* upon the request of the defendant, appoint a stenographer, who shall be sworn, and who shall take stenographic notes of all the testimony given at the trial, and shall provide the parties thereto with a transcript of his notes or any part thereof taken at the trial or hearing for which he shall be paid by the party requesting it at the rate fixed by the administrative justice for the department where the case is tried (emphasis supplied) . . . . The compensation and expenses of said stenographer shall be paid by the commonwealth.

"The request for the appointment of a stenographer to preserve the testimony at a trial shall be given to the clerk of the court by the defendant in writing not later than forty-eight hours prior to the proceeding for which the stenographer has been requested. If the court is unable, for any reason, to provide a stenographer, the proceedings may be recorded by electronic means upon the filing of written assent by all parties to the proceeding."

[2] The other reason given by the judge was that he "would provide a stenographer only in those cases where incarceration after conviction seemed likely." The statute does not permit any such differentiation. We note that the sentence in this case included a period of commitment to a house of correction. The sentence was stayed pending appeal by a single justice of this court.

the tapes, were able to agree on the only two corrections in the transcript prepared from the tapes which were desired by the defendant. See Mass.R.A.P. 8(c) and (e), as appearing in 378 Mass. 933, 934 (1979).[3] It is clear from the argument before us that counsel for the defendant will insist on his request for a stenographer at any retrial, and it is not unlikely that there will again be no appropriation from which to pay for the services of a stenographer. Accordingly, we take this occasion to express our views on the proper interpretation of the aforementioned § 27A(*h*).

Counsel for the defendant argues, in effect, that the first "shall" in that section is mandatory and that the defendant is entitled at all odds to a trial transcript prepared by a stenographer unless he (the defendant) chooses to assent in writing to a transcript prepared from an electronic recording. We think the argument overlooks the setting in which § 27A(*h*) was enacted and, in particular, the provisions now found in S.J.C. Rule 1:05, 382 Mass. 704 (1981). In *O'Coin's, Inc.* v. *Treasurer of the County of Worcester,* 362 Mass. 507 (1972), the Supreme Judicial Court ordered the issuance of a writ of mandamus requiring a county treasurer to pay for a tape recorder and three tapes which had been purchased by a judge of the Superior Court for use in a criminal session of that court in order to avoid a temporary closing of the session because no stenographer was available. The Supreme Judicial Court described the situation which gave rise to the purchase as an emergency (362 Mass. at 517), announced its intention to promulgate a rule on the subject of emergency expenditures (362 Mass. 516), and said that "[i]t is not essen-

---

[3] See now Mass.R.A.P. 8(b)(3)(v), 388 Mass. 1106 (1983), which took effect April 1, 1983. That rule reads as follows: "Unintelligible Portions of the Cassette. If portions of the cassette cannot be transcribed because they are unintelligible, the parties shall promptly use reasonable efforts to stipulate their content. If agreement cannot be reached, the parties shall promptly present their differences as to such portions to the trial judge who heard the testimony. The trial judge shall, if possible, settle the content of the unintelligible portions, which shall then be included in the transcript."

tial that there have been a prior appropriation to cover [such] expenditure[s]" (362 Mass. at 511).

Shortly after the decision in *O'Coin's,* the Supreme Judicial Court on November 8, 1972, promulgated its new rule 3:23, which was set out in 359 Mass. 832. Paragraph (1) of the rule provided that "[e]xcept as provided by paragraph (4), by *statute,* or by other rule or order of this court, no judge of a court shall enter into, order, or approve a contract on behalf of the Commonwealth or any of its political subdivisions requiring the expenditure of funds or the incurring of a liability in excess of any appropriation therefor, or for which no appropriation has been made, without the written approval of the appropriate judicial officer designated by this court" (emphasis supplied). Paragraph (2) of the rule provided that "the appropriate judicial officer" could approve an expenditure in excess or in the absence of an appropriation only upon a written finding that the "facilities, goods or services sought are reasonably necessary to the proper execution of the court's responsibilities." Paragraph (4) provided that in the absence of the prior written approval of the "appropriate judicial officer" no judge could direct or approve an expenditure in excess or in the absence of an appropriation except "in instances where failure to obtain the required facilities, goods, or services expeditiously and without delay will frustrate the execution of the court's responsibilities."[4]

We think it clear, as applied to a case such as the present, that S.J.C. Rule 3:23 established a canon of construction under which no statute authorizing or directing the appointment of a stenographer is to be interpreted as authorizing or directing an expenditure of money in excess or in the absence of an appropriation unless the statute expressly so

---

[4]Rule 3:23 was amended in 1979, but only to redesignate the "appropriate judicial officer[s]" in light of the court reorganization which had been effected by St. 1978, c. 478. The rule resurfaced without further change as rule 1:05 of the January 1, 1981, reorganization of the Rules of the Supreme Judicial Court, 382 Mass. 704 (1981).

provides.[5] We also think it clear that the Legislature must be taken to have had that canon in mind when it amended G. L. c. 218, § 27A, as part of the court reorganization effected by St. 1978, c. 478 ("An Act providing for the orderly administration of justice in the commonwealth"). See and compare *Condon* v. *Haitsma*, 325 Mass. 371, 373 (1950); *Boston Edison Co.* v. *Sudbury*, 356 Mass. 406, 417-418 (1969); *First Natl. Bank* v. *Judge Baker Guidance Center*, 13 Mass. App. Ct. 144, 151 (1982). Accordingly, we do not read § 27A(*h*) as impliedly authorizing or directing an expenditure in excess or in the absence of an appropriation.

To return to the case at hand, the entries are

*Judgment reversed.*

*Verdict set aside.*

---

[5] Compare the provisions of G. L. c. 29, § 26, which apply to the executive branch of the government.