COMMONWEALTH vs. ROGER W. O'NEIL, JR.

Plymouth. September 8, 1994. - November 9, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, & NOLAN, JJ.

*Judge. Clerk of Court. Self-Defense. Judicial Immunity.*

A District Court judge had inherent authority to compel a clerk-magistrate to perform his duties in circumstances where the clerk-magistrate had failed to respond to the judge's requests to report to a session or to send another clerk. [763-765]

A court officer acted within his authority in executing the lawful order of a District Court judge to bring the court's clerk-magistrate to the judge's courtroom. [765]

Evidence at the trial of a complaint for assault and battery did not support the defendant's assertion that his use of force was in self-defense. [765-766]

The doctrine of judicial immunity did not shield a clerk-magistrate from criminal liability for his assault and battery on a court officer in the hallway of the courthouse while acting in direct opposition to the lawful orders of a judge. [766-768]

COMPLAINT received and sworn to in the Plymouth Division of the District Court Department on March 8, 1991.

On transfer to the jury session of the Hingham Division, the case was tried before *Mary Ann Driscoll,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Donald A. Harwood (Thomas E. Finnerty* with him) for the defendant.

*David R. Marks,* Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. Following an altercation between the defendant, then the clerk-magistrate of the Plymouth Division of the District Court Department, and a court officer, William Dineen, criminal complaints were issued in the District Court

against the defendant for assault and battery by means of a dangerous weapon (shod foot), and assault and battery on a court officer engaged in the performance of his duties. On January 4, 1992, a judge of the Hingham District Court denied the defendant's motion to dismiss. The case proceeded to a trial before a jury two days later. At the close of the evidence, the defendant moved for required findings of not guilty on both complaints. Mass. R. Crim. P. 25, 378 Mass. 896 (1979). The judge allowed the motion as to so much of the complaint as alleged an assault and battery on a court officer, leaving an assault and battery charge. The judge denied the motion as to the assault and battery by means of a dangerous weapon charge.

On January 10, 1992, the jury convicted the defendant of assault and battery and acquitted him of assault and battery by means of a dangerous weapon. The judge imposed a sentence requiring the defendant (1) to complete an eighteen-month unsupervised probation period; (2) to avoid contact with Dineen and the Plymouth District Court; and (3) to pay a $500 fine. The defendant filed a timely notice of appeal.[1] We transferred the case to this court on our own motion.

On appeal, the defendant asserts three errors. First, the defendant contends that the judge erred by declining to give the jury instructions that the defendant's acts could be justified because he acted in self-defense to repel the efforts of Dineen, a court officer, to bring him before Judge James O'Neill. Second, the defendant argues that the judge erred by declining to instruct the jury that his acts were justified because at the time he was executing his lawful public duties as clerk-magistrate of the Plymouth District Court, and as such, was entitled to judicial immunity for his acts. Third, the defendant asserts that the judge erred by denying his motion to dismiss the complaint because he was entitled to judicial immunity for his acts. We conclude that there was no error, and affirm the defendant's conviction.

---

[1] The trial judge stayed the payment of the fine pending this appeal.

On the evidence presented, the jury could have found the following facts. On Friday, January 11, 1991, the defendant was the clerk-magistrate of the Plymouth District Court. Judge James O'Neill, a visiting District Court judge, was sitting in the second session courtroom which was located in a separate building behind the main courthouse. Judge O'Neill asked his court officer, Demetrius Gonsalves, to go to the defendant's office and ask him to start the proceedings in the second session or to assign a member of his staff to do so. See G. L. c. 218, § 12 (1992 ed.). Gonsalves located the defendant who was conducting clerk's hearings in his office. Informed by Gonsalves of the request of Judge O'Neill, the defendant responded that he would not serve as clerk for the second session because he had sixty-nine hearings to conduct.

Gonsalves relayed the defendant's message to Judge O'Neill. The judge told Gonsalves to return to the defendant and request that either the defendant or an assistant clerk staff the second session. Judge O'Neill also indicated that if the defendant did not himself come to court or send someone else to perform these duties, the judge would order that the defendant be brought forcibly before him. Gonsalves delivered this second message to the defendant, but again he refused to report to the second session. He also refused to send a member of his staff because "they had too much work to do." Gonsalves asked the defendant to accompany him to the second session to explain the situation to Judge O'Neill, but the defendant told Gonsalves to deliver the message himself.

After Gonsalves advised him of the defendant's second refusal, Judge O'Neill ordered Gonsalves to bring the defendant to the courtroom and "to get whatever help he needed to do so." Gonsalves then went to the first session courtroom to explain the situation to Judge Dennis Collari, the presiding judge of the Plymouth District Court. Judge Collari told Gonsalves to carry out Judge O'Neill's order, and to "get whoever [he] needed . . . to assist" him. Gonsalves then requested assistance from another court officer, William Dineen, and a Kingston police officer, Dennis O'Brien.

The three officers stopped the defendant in the corridor outside his office. Gonsalves told the defendant that Judge O'Neill had ordered him to bring the defendant to the second session. The defendant again refused. Dineen then gestured with his left hand within four or five inches of the defendant's person. After an exchange of words, the defendant grabbed Dineen, knocked him to the ground, climbed on top of him, pulled out some of his hair, and punched him in the face. During the struggle, the defendant kicked Dineen in the ribs as Gonsalves and O'Brien attempted to pull him off Dineen. After separating the two men, Gonsalves and O'Brien forcibly escorted the defendant to the second session courtroom. Judge O'Neill thereupon ordered the defendant to "staff the court," which he did.

1. *Claim of self-defense.* The defendant first asserts that Court Officer Dineen did not have authority to compel him to go to the second session, and that, therefore, the defendant was justified in acting in self-defense.[2] We reject this argument, both because Dineen did act with authority and because regardless of whether Dineen did have such authority, the defendant's use of force was not lawful.[3]

We have recognized that every judge has certain inherent powers. Implicit in the constitutional grant of judicial power

---

[2]On appeal, the defendant has expanded his self-defense argument. The defendant maintains that, because Dineen lacked authority to compel him to go to the second session, his conduct was justified to "repel a felonious kidnapping and false imprisonment." We will not ordinarily consider an argument raised for the first time on appeal. *Commonwealth* v. *Figueroa*, 412 Mass. 745, 752 n.11 (1992). While we do have the power to consider issues not fairly raised before the trial judge, we exercise that power only in the instance of a serious error which creates a substantial risk of a miscarriage of justice. *Commonwealth* v. *Garcia*, 409 Mass. 675, 678-679 (1991). This is not such a case.

[3]We note also that the issue pertaining to an assault and battery on a court officer "engaged in the performance of his duties at the time of such assault and battery," see G. L. c. 265, § 13D (1992 ed.), was removed from the case when the judge allowed as much of the defendant's motion for a required finding as related to assault and battery on a court officer. Thus, this issue did not go to the jury. Nevertheless, we comment on the question of a judge's authority because of its public import.

is authority necessary to exercise that power. *O'Coin's, Inc.* v. *Treasurer of the County of Worcester*, 362 Mass. 507, 510 (1972). These inherent powers are essential if the courts are to carry out their constitutional mandate. *Id.* "[A]lthough they may be recognized by statute, [these powers] . . . exist without a statute, for they 'directly affect the capacity of the judicial department to function.'" *Commonwealth* v. *Jackson*, 369 Mass. 904, 921-922 (1976). Every judge "must exercise his inherent powers as necessary to secure the full and effective administration of justice." *O'Coin's, Inc.*, *supra* at 514. See *Opinion of the Justices*, 314 Mass. 767, 776 (1943) (judge has inherent power to use contempt proceedings to ensure orderly administration of justice); *Crocker* v. *Justices of the Superior Court*, 208 Mass. 162, 180 (1911) (judge has inherent power to grant change of venue in order to secure impartial trial). See also *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.*, 374 Mass. 640, 664 (1978).

Of necessity, a judge's inherent powers must encompass the authority to exercise "physical control over his courtroom." *Chief Admin. Justice of the Trial Court* v. *Labor Relations Comm'n*, 404 Mass. 53, 57 (1989). As we noted in *Chief Admin. Justice of the Trial Court* v. *Labor Relations Comm'n*, "[t]he power of the judiciary to control its own proceedings, the conduct of participants, the actions of officers of the court and the environment of the court is a power absolutely necessary for a court to function effectively and do its job of administering justice." *Id.* at 57, quoting *State* v. *LaFrance*, 124 N.H. 171, 179-180 (1983). This power includes a judge's power "to protect his court from impairment resulting from inadequate facilities or a lack of supplies or supporting personnel." *O'Coin's, Inc.*, *supra* at 510. "A judge's direction to court officers to bring a person who is in the courthouse before him is a function normally performed by a judge." *Mireles* v. *Waco*, 112 S. Ct. 286, 288 (1991).

In this case, the defendant's steadfast refusal to report to the second session or to send another clerk created a situa-

tion wherein the judge was justified in resorting to his inherent powers. Judge O'Neill had twice requested a clerk's assistance so that the session's daily proceedings could begin. The defendant's failure to respond to Judge O'Neill's requests delayed the court's business and interfered with its ability to perform its judicial functions.

Furthermore, by refusing to accede to Judge O'Neill's order, the defendant shirked his responsibilities as clerk-magistrate. "The clerk, however, 'is a ministerial officer of the courts and is subject to the direction of the courts in the performance of his duties.' " *Boston* v. *Santosuosso*, 308 Mass. 202, 206 (1941). *Patrick* v. *Dunbar*, 294 Mass. 101, 104 (1936). On January 11, 1991, the defendant's duties were to respond to Judge O'Neill's requests to staff the second session. See G. L. c. 218, § 12 (1992 ed.) ("[the district court clerks] or one of them shall attend all sessions of the court and shall keep a record of all its proceedings"). In the circumstances, Judge O'Neill had the inherent authority to compel the defendant to do his job.

Court Officer Dineen acted within his authority in executing Judge O'Neill's lawful order. Judges typically, if not exclusively, carry out their orders through the office of another person, whether it be the parties to a case, the court officer, the court clerk, or another person. Because Dineen acted at Judge O'Neill's direction, and because Judge O'Neill had the inherent authority to control his courtroom by ensuring that the defendant or another clerk staff the second session, the defendant's first claim of error must fail.

Even if we were to accept, for the sake of argument, the claim that Dineen did not have authority to compel the defendant to go to the second session, the defendant was not justified in resorting to violence. The law is well settled that a person may use reasonable force to protect himself from harm. The right of self-defense, however, "ordinarily cannot be claimed by a person who provokes or initiates an assault unless that person withdraws in good faith from the conflict and announces his intention to retire." *Commonwealth* v. *Maguire*, 375 Mass. 768, 772 (1978), citing Annot., With-

drawal, After Provocation of Conflict, as Reviving Right of Self-Defense, 55 A.L.R.3d 1000, 1003 (1974). See *Commonwealth* v. *Naylor*, 407 Mass. 333, 335 (1990); *Commonwealth* v. *Griffith*, 404 Mass. 256, 265 (1989); *Commonwealth* v. *Johnson*, 379 Mass. 177, 180-181 (1979).

The jury would have been warranted in finding that it was the defendant who provoked the altercation, did not withdraw from the conflict, and never indicated any desire to withdraw from the conflict. Further, there is no evidence that Dineen approached the defendant in any way that would make him reasonably believe that he was in imminent danger of physical harm.[4] Regardless of Dineen's authority to compel him to go to the second session courtroom, therefore, the defendant's resort to force was both inappropriate and unjustified.[5]

2. *Claim of judicial immunity.* The defendant next asserts that the doctrine of judicial immunity should shield him from criminal liability for his assault and battery on Dineen in the hallway of the Plymouth District Court. We reject this argument.

It is a basic principle of our common law, "too well settled to require discussion, that every judge, whether of a higher or lower court, is exempt from liability to an action for any judgment or decision rendered in the exercise of jurisdiction

---

[4]The defendant testified that Dineen "stepped into" the defendant and grabbed his right arm. Even if we accept the defendant's contention that Dineen did touch him, we cannot accept that assaulting Dineen was an appropriate response.

[5]The defendant makes no claim that the judge's charge on the elements of self-defense, see *Commonwealth* v. *Evans*, 390 Mass. 144, 154 n.2 (1983), and on the Commonwealth's burden of proof on that issue was flawed in any respect. Because we conclude that the defendant's use of force was not justified under our traditional self-defense doctrine, we need not reach the issue of whether the rule announced in *Commonwealth* v. *Moreira*, 388 Mass. 596, 602 (1983), should apply to the conduct of court officers. See *id.* at 601 ("in the absence of excessive or unnecessary force by an arresting officer, a person may not use force to resist an arrest by one who he knows or has good reason to believe is an authorized police officer, engaged in the performance of his duties, regardless of whether the arrest was unlawful in the circumstances").

vested in him by law." *Allard* v. *Estes*, 292 Mass. 187, 189-190 (1935). See *LaLonde* v. *Eissner*, 405 Mass. 207, 210 (1989); *Gildea* v. *Ellershaw*, 363 Mass. 800, 811 (1973). "This immunity is founded upon considerations of public policy to the end that the administration of justice may be independent, based upon free and unbiased convictions and not influenced by apprehension of personal consequences." *Joyce* v. *Hickey*, 337 Mass. 118, 121 (1958).

Courts have expanded the doctrine of judicial immunity to include certain "quasi judicial" officers who are involved in an integral part of the judicial process and thus must be able to act freely without the threat of a law suit. *LaLonde, supra* at 211. See, e.g., *id.* at 212 (court-appointed psychiatrist, who performs an essential function by rendering services to the court, is entitled to immunity in the performance of those services); *Chicopee Lions Club* v. *District Att'y for the Hampden Dist.*, 396 Mass. 244, 251-252 (1985) (prosecutor immune from suit involving conduct "in discharge of [his] official duties"); *Temple* v. *Marlborough Div. of the Dist. Court Dep't*, 395 Mass. 117, 133 (1985) (court clerks acting at judge's direction entitled to immunity in suit alleging unlawful commitment).

Although judicial immunity may in some circumstances extend to court clerks, it surely does not extend to the situation at hand. Cf. *Temple, supra* at 133 (plaintiff failed to allege any facts indicating that court clerks behaved wrongfully). The defendant was not engaged in any judicial or ministerial duty when he assaulted Dineen. He was not conducting any hearing or performing any other judicial function. Instead, the altercation began in the corridor of the courthouse, when the defendant was walking to his office.

Although court clerks may be entitled to absolute immunity for their conduct when acting at a judge's direction, *Temple, supra* at 133, in this case the defendant acted directly against Judge O'Neill's order. The defendant's forcible resistance to the execution of a judge's order to perform duties imposed on the defendant by statute cannot be deemed a judicial act within his jurisdiction that would give rise to im-

munity. Indeed, the defendant's behavior was the very antithesis of judicial conduct, and was "clearly prejudicial to the administration of justice, and [was] misconduct unbecoming a clerk-magistrate that brings that office into disrepute." *Matter of Dugan*, 416 Mass. 461, 467 (1993). We decline to extend the doctrine of judicial immunity to allow clerk-magistrates to assault court officers.[6]

3. *Motion to dismiss.* The defendant's final assertion of error is that the judge erred by denying his motion to dismiss the complaint because the defendant was entitled to judicial immunity for his acts. As we noted above, the doctrine of judicial immunity will not protect the defendant from criminal liability for his assault and battery upon Dineen.

*Judgment affirmed.*

---

[6]It should be noted further that we have never held that judicial immunity, absolute or qualified, extends to criminal conduct. See also *Mireles* v. *Waco*, 112 S. Ct. 286, 287 n.1 (1991).