COUNTY COMMISSIONERS OF THE COUNTY OF BRISTOL *vs.* THE JUDGES OF PROBATE OF THE COUNTY OF BRISTOL.

Bristol.     March 3, 1959. — April 1, 1959.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Supreme Judicial Court*, Superintendence of inferior courts.   *Court House.*

This court under G. L. c. 211, § 3, as amended by St. 1956, c. 707, § 1, has the ultimate power to determine the use of a court room in case of a controversy between two inferior courts as to its use.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Bristol on June 18, 1958.

The suit was reserved and reported by *Whittemore, J.,* without decision.

*Gerald P. Walsh,* for the plaintiffs.

*James W. Kelleher,* for the defendants.

WILKINS, C.J.   This bill for a binding declaration under G. L. c. 231A presents what is described as a controversy between the plaintiff county commissioners and the defendants, who are the two judges of probate of the county of Bristol, as to their relative powers with respect to the use of a court room in the "Superior Court building" in New Bedford.   A single justice has reported the case without decision.   The facts appear in a stipulation as to all the material facts amounting to a case stated.

For many years prior to 1950 the Probate Court for the county of Bristol when sitting in New Bedford used a court room in the "Superior Court building."   The land and building were owned by the county, and the room or rooms were assigned under the general authority of the county commissioners, who managed and controlled the property on behalf of the county under the provisions of G. L. c. 34, particularly §§ 3 and 14, and under the general powers vested in them by law and custom.   When the Superior Court was not sitting for criminal or civil business, the Probate Court had available to it, and frequently used, the main or principal jury court room, otherwise used for jury trials.   In 1950, as a result of increased demand for court rooms, jury rooms, and library facilities, there was enacted St. 1950, c. 332, entitled "An Act authorizing the county commissioners of Bristol county to erect and furnish an addition to the superior court house in the city of New Bedford."   This statute was amended by St. 1951, c. 389, entitled, "An Act authorizing the county commissioners of Bristol county to acquire land and erect and furnish an addition to the superior court house in the city of New Bedford," § 1 of which reads: "The county commissioners of Bristol county are hereby authorized to raise and expend

a sum not exceeding three hundred thousand dollars for the taking of land described in section one A and for the erection thereon and on land now owned by said county in the city of New Bedford of an addition to the superior court house located in said city and the equipping and furnishing thereof. Said addition shall be erected for the purpose of providing suitable quarters for the second judge of the probate court of said county, together with a court room for said court, for providing reasonably convenient quarters for women jurors and for providing additional space for the law library now located in said court house."

The addition was constructed and financed as provided in these statutes. In it were facilities for jurors, an enlargement of the "Superior Court library," a large court room and adjacent judge's lobby. The addition is connected with the older building by corridors giving free access, and has been maintained by the same janitors.

In 1957 upon a request of the Chief Justice of the Superior Court for facilities for dual jury sessions, the plaintiffs voted to authorize the use of the new court room, when needed, with other facilities to be made available to the Probate Court during such periods. The defendants refused to accede except for two civil sittings, one in May and one in December, an arrangement made directly with "a representative of the courts" and not with the plaintiffs. In June, 1957, and in June, 1958, criminal sittings of the Superior Court at New Bedford were adjourned to Taunton for lack of suitable and adequate facilities for the proper transaction of court business.

In May, 1958, the plaintiffs' counsel made written request that the room be made available for assignment when in their judgment it was needed for jury sittings of the Superior Court, but the defendants refused. The county commissioners contend that they have the power to allow the use of room by the Superior Court at such times as they shall in good faith determine. This the defendants deny, insisting that the county commissioners cannot do so during such times as the defendants in good faith have determined

that the room is necessary for the business of the Probate Court.

No question has been raised as to the appropriateness of the declaratory procedure of c. 231A. See *Larcom* v. *Olin,* 160 Mass. 102, 110; *Bauer* v. *Mitchell,* 247 Mass. 522, 529; *Dupuis* v. *Reed,* 289 Mass. 365, 367–368. Without intimating that there is any doubt, we merely mention the point and pass it by. What we decide we could have considered of our own motion.

We see no occasion to discuss the relative powers of the parties. Whichever way we might decide, the final power resides in us. Fundamentally, the controversy is between the judges of the Superior Court and the judges of the Probate Court for Bristol County. What is obviously at stake is the expeditious handling of the business of the courts, not the business of any one court, but the business of all the courts. The public interest will best be served by an expeditious decision by us now, a decision which will be the most conducive to administrative efficiency.

Upon recommendation of the Judicial Survey Commission (1956 House No. 2620)[1] the Legislature enacted St. 1956, c. 707, entitled "An Act providing for administration of the courts and an executive secretary to the justices of the Supreme Judicial Court." One of the chief reasons for the enactment was the relief of congestion in the Superior Court. See report of the commission, pp. 37–39. Section 1 of that act added a new paragraph to G. L. c. 211, § 3, which reads in part: "the justices of the supreme judicial court shall also have general superintendence of the administration of all courts of inferior jurisdiction, including, without limitation, the prompt hearing and disposition of matters pending therein, and the functions set forth in section three C; and it may issue such writs, summonses and other processes and such orders, directions and rules as may be necessary or desirable for the furtherance of justice, the regular execution of the laws, the improvement of the

---

[1] The report is printed in XLI Mass. L. Q. No. 1 (March, 1956).

administration of such courts, and the securing of their proper and efficient administration." The functions set forth in § 3C include " (c) Examination of the arrangements for accommodations for the use of the courts . . ." and " (e) Examination, from time to time, of the operation of the courts . . . ."

A controversy between two courts as to the right to occupy a court room is clearly within the scope of St. 1956, c. 707, § 1. There is no issue before us of a conflict as to the use of the court room on any specific future date. We hope that a reasonable spirit of coöperation will resolve any future question of the sort. But should such question arise and be brought to our attention by any interested person, we would not hesitate to exercise our power. In that event, we would not regard the reference to the Probate Court in St. 1951, c. 389, § 1, quoted above, as decisive.

One of the prayers is that we "make such other appropriate declaration or judgment as may be necessary to establish the rights of the parties, to determine the use of the facilities in question, and to terminate the controversy." Accordingly, a decree is to be entered that the ultimate power as to the use of the court room is in the Supreme Judicial Court.

*So ordered.*